UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MERRIMACK MUTUAL INSURANCE COMPANY,
as subrogee of NICHOLAS CRESTA,
        Plaintiff,

v.                                    C. A. No. 04-10929-RGS

BLACK & DECKER (U.S.) INC.,
        Defendant.


### BLACK & DECKER (U.S.) INC.'S CONCISE STATEMENT OF FACTS

1. On Monday, March 10, 2003, there was a fire at 17 Millbrook Lane, Wakefield, MA. (Exhibit B – Second Amended Complaint)
2. On March 10, 2003 Nicholas Cresta owned the house located at 17 Millbrook Lane, Wakefield, MA. (Exhibit A – Deposition of Victoria A. Cresta - page 14)
3. Merrimack Mutual was the homeowners' insurer for Nicholas Cresta. (Exhibit B – Complaint)
4. Merrimack Mutual has filed a Second Amended Complaint as Subrogee of Nicholas Cresta seeking recovery from Black & Decker (U.S.) Inc., the manufacturer of a toaster oven located in the kitchen of the house. (Exhibit B)
5. On March 10, 2003 Nicholas Cresta lived in a basement apartment and Victoria Cresta and her two children, ages 6 and 8 lived in the upper floor of the house. (Exhibit A – pages 14-15; pages 41-42)
6. Nicholas Cresta was completely blind. (Exhibit A – page 17)
7. On March 10, 2003 Victoria Cresta made breakfast for the children, consisting of cereal. (Exhibit A – page 62-63)
8. The last time the toaster oven was used prior to the date of the fire was 4-7 days before. (Exhibit A – pages 32, 35 and 59)
9. On March 10, 2003 no one used the Black & Decker toaster oven before Victoria Cresta and the children left the house at approximately 8:30 a.m. (Exhibit A – page 64)
10. While making breakfast Victoria Cresta passed within two feet of the toaster oven. (Exhibit A – page 65)

11. At no time while she was in the vicinity of the toaster oven did Victoria Cresta notice that the toaster oven was on. (Exhibit A – page 65)
12. At no time while she was in the vicinity of the toaster oven did Victoria Cresta notice the heating coils of the toaster oven glowing. (Exhibit A – pages 65-66)
13. Victoria Cresta believes that "if the toaster oven was on and glowing, the coils glowing that morning around 7:30 a.m. before [she] took [her] kids to school, [she] would have noticed it." (Exhibit A – page 66)
14. Victoria Cresta and her children (and a friend of Nicholas) left the house at approximately 8:30 a.m. (Exhibit A – page 67)
15. Shortly after Victoria Cresta returned to the house at approximately 10:00 a.m. she discovered a fire in the kitchen. (Exhibit A – pages 59-60)
16. At that time, Nicholas Cresta was in his bed in the basement. (Exhibit A – page 67)
17. When Victoria Cresta discovered Nicholas Cresta in his bed "there wasn't any indication [he] had gone anywhere that day from the time Victoria had woken him up before she left with the children." (Exhibit A - page 67)
18. Nicholas Cresta never came upstairs and used the toaster oven. (Exhibit A – page 67)
19. There wasn't anybody in the house from the time Victoria Cresta and her children left the house at 7:30 a.m. and she returned at 10:00 a.m. (Exhibit A – pages 66-67)
20. There is no evidence that any other person was in the house from the time Victoria Cresta left the house until the time she returned.
21. There is no evidence that anyone activated the toast lever of the toaster oven from the time Victoria Cresta left the house until the time she returned.
22. The plaintiff is unable to identify anyone other than Nicholas Cresta who was in the house from the time Victoria Cresta left the house until the time she returned.
23. The plaintiff is unable to identify anyone who activated the toast lever of the toaster oven from the time Victoria Cresta left the house until the time she returned.
24. At no time that she owned the toaster oven did the bell fail to go off when the toast cycle was done. (Exhibit A – page 40)
25. At no time that she owned the toaster oven did the toaster oven fail to turn off when the toast cycle was done. (Exhibit A – page 40)
26. At no time that she owned the toaster oven did Victoria Cresta see the toaster oven "do anything that [she] didn't expect it to do." (Exhibit A – pages 40-41)

27. At no time that she owned the toaster oven did Victoria Cresta "ever have a problem with the toaster oven." (Exhibit A – page 40)
28. Mrs. Cresta told Richard Ciesla that she had never had any problems with the toaster oven, including on the date of the fire. (Exhibit C – pages 105-106)
29. Victoria Cresta has no idea what caused the fire. (Exhibit A – page 91)
30. Merrimack Mutual's claim against Black & Decker is based on the allegation that the toaster oven "had a defective solenoid." (Exhibit D- Deposition of Michael Rains – page 26)
31. Michael Rains was retained by or on behalf of Merrimack Mutual to inspect the toaster oven. (Exhibit D – page 18)
32. The solenoid in the toaster oven is designed and operates to cause the pin that is extended when the toast lever is depressed (turning the toaster oven "on") and holds the toast lever in the down ("on") position, to return to its original ("rest") position, thereby permitting the toast lever to return to the up or "off" position. (Exhibit D – page 56)
33. Michael Rains' expert opinion is not that the solenoid itself was designed or manufactured defectively. (Exhibit D – page 110)
34. Michael Rains' expert opinion is that the design of the toaster oven is defective because "if the solenoid fails for any reason, including just wear out, the failure mode is an unsafe mode and that the oven won't shut itself off when it's put in the toast operating mode." (Exhibit D – page 110)
35. Michael Rains's expert opinion is that "at some point in time [prior to the date of the fire], the solenoid failed such that when the toast lever was put in a down position the next time, it stayed in the down ["on"] position without releasing." (Exhibit D – page 73)
36. Michael Rains does not know when the solenoid failed. (Exhibit D – page 73)
37. Michael Rains' has testified that if Victoria Cresta has testified that they never had a problem with the toaster oven shutting off, that it always shut off as intended, such testimony "would be inconsistent with [his] scenario of how [the] toaster oven failed." (Exhibit D – page 75-76)
38. Michael Rains' expert opinion is that the toaster oven remained on and ignited combustible material. (Exhibit D – page 83)
39. Michael Rains' expert opinion that the toaster oven remained on and ignited combustible material is dependent upon somebody or something turning the toaster oven on the morning of the fire. (Exhibit D – page 83)
40. Michael Rains' expert opinion regarding a defect is not that the toaster oven turned on by itself. (Exhibit D – page 76)

41. Michael Rains' expert opinion and "scenario of product defect and failure requires --- resulting in this fire requires someone to have actually turned [the] toaster oven on." (Exhibit D – page 76)
42. "If the toaster oven wasn't somehow turned on [Rains] can't explain why it set a fire." (Exhibit D – page 83)
43. Any opinion that Michael Rains has regarding how somebody or something turned the toaster oven on the morning of the fire "is speculation." (Exhibit D – page 83)
44. Richard Ciesla was hired by EFI on behalf of Merrimack Mutual to inspect the fire scene and materials found there and serve as a "cause and origin expert." (Exhibit C – page 18)
45. Richard Ciesla never obtained any information from any source, in the course of [his] cause and origin investigation, that indicated that there was any reason to believe that the toaster oven had been on or turned on by anybody in the week from the time Vicky Cresta last used it through to the time of the fire." (Exhibit C – page 35)
46. Richard Ciesla has not identified any person or thing that pushed the toast lever down. (Exhibit C – pages 97-98)
47. It is Richard Ciesla's opinion that the toaster oven "came on by itself" after Mrs. Cresta last saw the oven and was in proximity to the toaster oven on the morning of the fire. (Exhibit C – pages 99 and 103)
48. Richard Ciesla believes it is Michael Rains' opinion that the toaster oven came on by itself because of a "defective solenoid." (Exhibit C – page 100-101)
49. The toast lever was found in the "up" or "off" position after the fire. (Exhibit D – pages 56 -57).

Black & Decker (U.S.) Inc.,
By Its Attorneys,

*[signature]*

Scott J. Tucker, BBO#503940
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108
(617) 557-9696